## H. B. COFFEY v. THE STATE.

No. 4655.   Decided October 31, 1917.

**1.—Local Option—Sufficiency of the Evidence.**

Where, upon trial of a violation of the local option law, the evidence sustained the conviction, there was no reversible error.

**2.—Same—Indictment—Misspelling.**

In the absence of any doubt that defendant was in any way misled by the misspelling of the word "February," there was no reversible error in overruling a motion to quash the indictment. Besides, the bill of exceptions is insufficient.

**3.—Same—Evidence—Orders of Commissioners Court.**

Upon trial of a violation of the local option law, there was no error in admitting in evidence the various orders of the Commissioners Court declaring the result of the election, etc.

**4.—Same—Evidence—Publication—County Judge—Contest.**

Where the local option election had not been contested within thirty days after the declaration of the result, there was no error in introducing in evidence the certificate of publication by the county judge, etc. Following Doyle v. State, 59 Texas Crim. Rep., 60, and other cases.

**5.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions did not show what the answer was to the question propounded by the Sttae, the same can not be considered on appeal.

**6.—Same—Continuance—Want of Diligence—Impeaching Testimony—Second Application.**

Where defendant's application for continuance was a subsequent application and did not comply with the statute, showed a want of diligence, and that the

absent testimony was of an impeaching character, the same was correctly over-ruled. Following Griffith v. State, 62 Texas Crim. Rep., 642, and other cases.

### 7.—Same—Jury and Jury Law—Talesmen.

Where a list of the jury was given out to the attorneys and after they exercised their challenges a list was made out by the clerk of the jurors not challenged, only eight having been chosen, and the sheriff was then instructed to bring in the said talesmen to complete the jury, there was no reversible error, although the said eight jurors had been permitted to separate without instructions from the court, in the absence of a showing what such instruction should have been.

### 8.—Same—Statutes Construed—Separation of Jurors.

There is no statute in this State requiring that jurors who have been pre-liminarily selected shall be kept together, or that the court shall give them instructions, although this may be the better practice under article 745, C. C. P., and in the absence of any showing that any of said jurors had in any way been approached by anyone or anything was said to them, or that they were incompetent or that they were not fair and impartial, there was no reversible error.

Appeal from the District Court of Morris.  Tried below before the Hon. J. A. Ward.

Appeal from a conviction of a violation of the local option law; penalty, one year confinement in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of orders of Commissioners Court:  Cleveland v. State, 190 S. W. Rep., 177, and other cases.

PRENDERGAST, Judge.—Appellant was indicted April 18, 1917, for making an unlawful sale of intoxicating liquor (whisky) on February 26, 1917, to M. E. Stegall, after an election had been held in June preceding, putting the prohibition law in effect in said county. He was convicted, and the lowest punishment assessed against him.

All the orders ordering said election, canvassing and declaring the result, and the order of the Commissioners Court duly entered and published prohibiting the sale as alleged in the indictment, were proven up and introduced in evidence.

Stegall, the alleged purchaser, testified positively that about February 26, 1917, "I purchased some whisky from Mr. Coffey; I paid him $2 for two pints—$1 a pint; that was in Morris County, Texas. I drank it and know it was whisky."

He was put through a long and severe cross-examination about various matters; where he had lived, what he had done, and other matters unnecessary to state.  On his cross-examination, and by other evidence, too, it was clearly shown that on said occasion he and L. L. Ellis were arranging to go some eight or ten miles on a fishing trip, and that they did go; that they were in appellant's store and bought from him

some provisions to take, and which they did take, with them; that they hired appellant' to take them in his automobile, which he did. Among other things, on cross-examination, he swore: "I bought two pints of whisky from Hugh Coffey (appellant), and gave him $2 for it. He did not hand me the whisky but put it in a box. We got ready to start and he asked me if we wanted the whisky and we told him to put it in. I told him I wanted two pints. I did not pay him until we came back from the fishing trip. . . . I saw him put it in the box. I don't recollect the name of the whisky, but it was red whisky. It was in pint bottles." He further swore: "I did not ask him the price of it." He further swore in substance, that Ellis at the same time also bought from appellant two pints of whisky under the same circumstances that he had bought the two pints and that appellant put them in the box with the groceries that they had bought from him. He further swore that he and Ellis hired appellant to take them, and said whisky and groceries, in his automobile, to their fishing place, eight or ten miles off and that he was to charge each of them $1 therefor. The groceries they bought aggregated $2.80. The whisky that the two men bought aggregated $4, and, according to his testimony, $2 for taking them in the automobile would aggregate $8.80. Stegall swore that after they returned from the fishing trip he paid appellant $8.80, and that it included the price of the whisky. Appellant said that they each were to pay him $3 apiece for his taking them to the fishing place, and he accounted for the $8.80 that way. He also swore that said parties at said time got four pints of whisky from him, the usual price of which was $1 a pint, and that he put that in the box with the groceries they bought from him, and he hauled the whole, with the two parties, out to the fishing place; that he returned at once, did not remain there, and did not drink any of the whisky. He claimed that he made a present of the whisky to these parties. They both denied that he had made them a present of it, but each, in substance, swore that they paid him $1 a pint for it.

Said Ellis testified that he and Stegall went fishing and had appellant to take them and that they got the provisions and whisky from appellant at the time. He said: "We got the whisky from Mr. Coffey. I could not tell you what we paid for it. When I went to pay my bill I just asked for my part of the fishing bill. The understanding between me and Stegall was that I pay half the bill. I did not ask what the whisky was or anything." That when he asked what his bill was Coffey told him $4.40, and that he paid to Coffey, some weeks after he returned from the fishing trip, that amount.

Appellant introduced Frank Wilkinson, who testified substantially that he was present in appellant's store at the time Stegall and Ellis got the groceries and whisky from appellant. He swore that Rel Coleman and others were present in the store at the time also; that on this occasion, and while they were buying said groceries, he heard Ellis ask appellant: "Hugh, have you got anything?" Hugh told him, "Yes,

a little." Mr. Ellis said, "Put in some," and Hugh said he would. ". . . I saw Mr. Coffey put something in the box." He further swore that this something which appellant put in the box was four pint bottles of whisky; that he got the bottles of whisky out of a box under his counter.

Appellant also introduced Luther Coffey, who testified that he was present on said occasion when Stegall and Ellis purchased the groceries and appellant put in the whisky for them. His testimony was substantially like Wilkinson's.

Appellant, himself, testified, and his testimony was to the same effect as Ellis' and Stegall's, that they bought from him on that occasion some groceries and that he took them and their groceries and the whisky with them to the fishing point eight or ten miles distant; that he did not stay there at all, but returned, and drunk none of the whisky himself. The substance of his testimony was, that these parties, or Ellis, procured this whisky from him at the time, as all the other witnesses testified, but he testified that he did not sell it to them at any price but that he made them a present of it. He also swore that each, Ellis and Stegall, later paid him one-half for the groceries and one-half of his charge for hauling them out, but that they did not pay him for the whisky.

Undoubtedly the testimony was clearly sufficient to show that appellant made the sale of two pints of whisky to Stegall and that Stegall paid him therefor. His claim that he did not sell the whisky to these parties but that he gave it, which was worth $4, to them, is unreasonable, and the jury was clearly authorized, if not required under the testimony, to believe that he sold them the whisky and that they paid him for it, and that he did not give it to them.

There is in the record what must be the original, not a copy, of what is termed a bill of exceptions. At the head of it is the style of the cause, the number, the court and the term thereof. It is subdivided into eight separate and distinct heads. Each starts with "Be it remembered that upon the trial of the above entitled and numbered cause," then very meagerly and very briefly sets out the different things of which he complains of the action of the court. The first is that the court overruled his motion to quash the indictment on the ground that it charged the offense was committed on the 26th day of "Reburary," 1917, to which he excepted. At the end of this omnibus bill of exceptions the court made an explanation and qualification. Of this item he stated: "The indictment was written on a typewriter and a carbon copy was made to be served on the defendant, and the carbon paper became folded and did not make the letter 'F' in 'February,' plain. I examined the carbon copy and it appeared more plainly to be February." We have examined the copy of the indictment in the record and it is there spelled plainly "February," and not "Reburary." Even if we are authorized to consider said paper as a bill of exceptions, on this point the ruling of the court was clearly correct. Even if the

first letter of the word "February" was so indistinct or blurred as to appear to be "R" instead of "F," there can be no particle of doubt but that appellant was in no way misled, and could not have been, by this letter. See the authorities coollated in 2 Vernon's Crim. Stats., p. 231, and 1 Branch's Ann. P. C., secs. 489 and 490.

His subdivision 2 of said purported bill complains that the court erred in admitting in evidence the order of the Commissioners Court declaring the result of said prohibition election because the election was held on June 3, 1916, and the returns canvassed and the result declared on June 12, 1916, which shows that only nine days elapsed from the holding of the election until this action of the Commissioners Court; and he objected to the introduction of the order declaring the result, which the court overruled.

In his third subdivision he complained of the court's permitting the certificate of publication by the county judge of the order declaring the result of the election, which record, he alleges, was certified by the clerk to have been done on June 12th, because it was an erroneous declaration and in conflict with that already introduced declaring the result of the election; and he claims such certificate was void; that the court overruled his objection and admitted said testimony to which he excepted. Not in either of these subdivisions is the document which he complains was introduced in evidence, copied or otherwise stated than as substantially stated above. The court at the end of said purported bill as to this matter, said, "I admitted all the orders of the Commissioners Court because no contest of the election was filed within thirty days after the declaration of the result of the election, and the entry of the certificate of the county judge that he had caused the order of the Commissioners Court to be published for thirty days as required by law was conclusive that all the orders were regular, in the absence of a contest of the election." There can be no question but that the ruling of the court was correct under the express provisions of the statute and the many decisions of this court on the point. Rev. Civ. Stats., arts. 5721 and 5728; Doyle v. State, 59 Texas Crim. Rep., 60; Wesley v. State, 57 Texas Crim. Rep., 277; Gipson v. State, 58 Texas Crim. Rep., 405; Hardy v. State, 52 Texas Crim. Rep., 420; Wilson v. State, 107 S. W. Rep., 818; Alexander v. State, 53 Texas Crim. Rep., 504; Romero v. State, 56 Texas Crim. Rep., 435, and many other decisions.

Another of said subdivisions complains that the witness Stegall was asked the question: "State whether or not about the 26th day of February you purchased any whisky from Mr. Coffey?" This subdivision does not show that he answered said question, or if so, what his answer was. His sole objection to the question was because he claimed the indictment misspelled the word "February" and spelled it "Reburary." There is no error shown in this matter.

His next subdivision complains that the district attorney, upon re-direct examination of said Ellis, asked him twice in the affirmative and

once in the negative if Hugh Coffey (defendant), "did not run a saloon up there?" which manner of questioning, he claimed, was prejudicial to him. What the witness answered, if he did, is not disclosed. This shows no error.

The next subdivision shows that on April 23, 1917, when the case was called for trial, he applied for a continuance on account of the absence of said Rel Coleman, who resided in said county. He alleged that he had used due diligence to procure his attendance. The only diligence alleged was that on April 20th a subpoena for him was returned that the witness was out of the county. He alleged that he expected to prove by said witness that said Stegall did not have any conversation with the defendant at the time of the alleged sale of said liquor, and that he would further testify that said Ellis told him that he and Stegall were going fishing and wanted defendant to carry them in his car, and what occurred between them about his taking them in his car to the fishing place, that he did not want to take them but that he would do so for $6; and that Ellis further stated to said Coleman that he, Ellis, had been on a drunk the night before and needed some whisky and wanted some to take along to sober up on, and that the defendant placed some whisky in the box of groceries which said Ellis had purchased for the fishing trip. Upon hearing said motion, while the court would not continue the case on said application, he postponed the trial of the case until April 27th. When the case was again called for trial on April 27th defendant made what he called a supplemental application for a continuance in which he alleged that he had made diligent inquiry and exerted all means in his power to find the exact location of said witness and that he had located him in Dallas. No other process was ever issued for said witness to any place after the return on April 20th that he was out of the county. Appellant does not, by his second application, show what diligence he had used to find the witness. Neither does he allege, in his second application, that the testimony by said witness can not be procured from any other source known to him, as the statute requires. As a matter of fact, he did introduce two other witnesses, Wilkinson and Luther Coffey, who testified substantially that they, together with said witness, were present on the occasion of said alleged sale and they did not hear Stegall have any conversation with defendant. The claimed evidence of the absent witness of what Ellis said to him, if admissible at all, would only have been for the purpose of impeaching Stegall. A continuance to get such impeaching testimony is not authorized. The said supplemental motion for a continuance was, and has many times been, held to be a second application. Griffith v. State, 62 Texas Crim. Rep., 642; Bowen v. State, 65 Texas Crim. Rep., 47, 143 S. W. Rep., 187, and other decisions.

The next, the seventh subdivision, is: "Be it remembered that on the 27th day of April, A. D. 1917, and on the trial of the above entitled and numbered cause, the defendant filed the following exception to the action of the court: 'State of Texas v. H. B. Coffey, No. 2044. The

defendant excepts to the acts of the court in permitting eight of the jurors after the list had been struck by both the State and the defendant's counsel, and had taken their seats in the jury box, and before they had been sworn, to separate and leave the courtroom without instructions from the court while the sheriff was out selecting talesmen to complete the jury of eight men already selected, and drawn by the clerk of the court. Signed J. H. French, Jr., attorney for defendant. Filed April 27, 1917. A. W. Sweeney, clerk.' The court permitted the filing of the above written exception at the trial of this cause as a part of the record in this cause, and the defendant asks that this bill of exceptions be signed and filed as a part of the record in the case." This is, in full, said subdivision. No such motion appears anywhere else in the record. This subdivision, and nothing else in the record, shows when such a motion was called to the attention of the court. The only other way in which this matter is shown is a statement by the judge at the end of this omnibus bill, if it can be called a bill of exceptions, towit: "A list of the jury was given out to the attorneys and after they exercised their challenges the clerk made out a list of those not challenged by either party and it was found only eight jurors were chosen. I then swore the sheriff and sent him out to summon other jurors to complete the jury. The eight jurors chosen were called to the jury box, but not sworn. While the sheriff was out after the other jurors to complete the jury some of the eight jurors, who had been selected and called to the jury box, but not sworn to try the case, were permitted to retire from the courtroom. I permitted the eight jurors selected to separate before the jury was completed and before the jury had been sworn." It will be noted that in said motion the complaint is not because these eight jurors were permitted to separate and leave the courtroom, but the only complaint was that they were permitted to do this "without instructions from the court." What such claimed instructions should have been is in no way disclosed.

There is no statute in this State requiring that jurors who have preliminarily been selected as these eight jurors were in this case, shall be kept together and not permitted to separate, nor that the court shall give them any instructions whatever. While, of course, it might be proper for the court to prevent their separation and also give them some instructions, the only statutory provision on this subject is article 745, C. C. P., as follows: *"After the jury has been sworn and empaneled* to try any case of felony, they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with the consent of the attorney representing the State and the defendant, and in charge of an officer."

There is not an intimation in said motion that any or either of said jurors had in any way whatsoever, or by any person whomsoever, been approached, or said anything, or that anything was said to any of them. The said purported motion does not claim that he challenged any or all said eight jurors on any ground. It does not in any way claim that they were incompetent or they were not fair and impartial jurors.

The sole ground, as stated in the motion, is that he excepted to the court permitting these jurors to separate and leave the courtroom "without instructions from the court." Simply that, and nothing more. Under the circumstances, the action of the court in this matter does not present reversible error.

The judgment is affirmed.                                    *Affirmed.*