E. A. DECHERD V. THE STATE.

No. 9762.  Delivered Feb. 3, 1926.

Rehearing denied Feb. 28, 1926.

**1.—Forgery—Indictment—Held Sufficient.**

Uniformly the courts of the state have held that when charging the intent on ordinary forgery, it is not necessary to go further than to use the language of the general statute, namely, with intent to injure and defraud. See Art. 454, Vernon's Texas Crim. Stat., Vol. 2. Following Johnson v. State, 35 Texas Crim. Rep., 271. Also Art. 979, P. C., 1925.

**2.—Same—Continued.**

Under Art. 947 P. C., New Act 1006, relating to the forging of land titles, in stating the intent in the indictment, the averment is sufficient which charges that the act was without lawful authority, and with the intent to defraud. This view finds support in the language of the statute

wherein it is said: "Or in any way injure, obtain the advantage of, or prejudice the rights or interest of the true owner of the land, or *with any fraudulent intent whatsoever.*" See Art. 951, New Art, 1010 P. C. Following Thompson v. State, 69 Texas Crim. Rep. 31, and other cases cited.

### 3.—Same—Continued—Approved Form.

In Willson's Texas Crim. Forms, page 221, Form 43, the form of indictment under this statute is found that has been approved by this court in many cases, beginning with Ham & State, 4 Texas Crim. App., 645, rendered in the year 1878, and followed by this court to the present term. See Thompson v. State, supra; Weber v. State, 78 Texas Crim. Rep., 268; Roberts v. State, 85 Texas Crim. Rep., 196, and other cases cited.

### 4.—Same—Indictment—Variance—Immaterial.

Where in the release introduced in evidence, the $1,250.00 note is described as "*payzable* to George T. Vickers," whereas in the indictment it is spelled "*payable*," the alleged variance was properly held immaterial by the trial court. See for illustrations numerous cases cited by Mr. Branch in his Ann. P. C., Sec. 490; Stuart v. State, 57 Texas Crim. Rep., 592, and other cases cited. It is only a material variance that is available.

### 5.—Same—Evidence—Interrelated—Held, Admissible.

The forgery charged was of a note for $1,250.00 and at the time of its delivery, a release of a vendor's lien was also shown to have been delivered. The objection to proof of the delivery of the release upon the ground that the forgery of the release was an extraneous crime, is not well taken. The transactions are deemed so interrelated as not to be within the inhibition against the receipt of evidence of collateral offenses.

### 6.—Same—Evidence—Showing Intent—Properly Received.

The receipt of evidence of the payment of Dr. Callaway to appellant of $1,080.00 by a check payable to Tubbs at the time of the delivery to him of the forged note and release, and also the letter written by appellant to Dr. Callaway in which he admitted that the appellant had appropriated the check for $1,080.00 made payable to Tubbs, was properly received upon the issue of intent. See Hennessy v. State, 23 Texas Crim. App. 340; Rose's Notes on Texas Rep., Vol. 5, p. 615.

#### ON REHEARING.

### 7.—Same—Indictment—Held Sufficient—Statute Construed.

Art. 1010 P. C. lays down a legislative measure of what is necessary in an indictment for an offense under Chap. 2, Title 14, of said Penal Code, viz, a reasonably certain description of the act constituting the offense, and also in connection therewith an allegation in general terms of an intent to defraud.

### 8.—Same—Continued.

While Art. 1006 of said P. C. names many specific acts, the doing of which constitutes forgery, and names several specific intents, concluding with the general expression, "*or with any fraudulent intent whatsoever,*" we do not think the enumeration in said article contravene or affect the broad direction of Art. 1010 as to indictments. Distinguishing Ham v. State, 4 Texas Crim. App. 645.

Appeal from the Criminal District Court of Dallas County. Tried below before the Hon. Felix D. Robertson, Judge.

Appeal from a conviction for forgery, penalty six and one-half year ins the penitentiary.

The opinion states the case.

*A. S. Broadfoot* and *Basket & DeLee* of Dallas, for appellant.

*Shelby Cox*, Criminal District Attorney, *R. G. Storey*, Special Assistant District Attorney, *Sam D. Stinson*, State's Attorney, and *Nat Gentry, Jr.*, Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Forgery is the offense, punishment fixed at confinement in the penitentiary for a period of six and one-half years.

It is charged in the indictment that the release of a vendor's lien from S. T. Tubbs to Morgan Callaway, Jr., was forged. The release is set out in the indictment and states in substance that on the first day of July, 1921, George T. Vickers conveyed by deed to Henry Dannelly, lot 6, block 1 of R. B. Parks' Subdivision of Block 1405 of the City of Dallas; that in the deed there was retained a vendor's lien to secure $1,250.00 purchase money which was evidenced by a note for that sum, dated July, 1921, payable to George T. Vickers. The instrument recites that the note has been paid to S. T. Tubbs, the legal owner, and that the lien securing it is released. The instrument, dated July 5, 1924, purports to bear the signature of S. T. Tubbs and to have been acknowledged on the same day before E. A. Decherd, a notary public of Dallas County, Texas. That this release was forged by him was proved both by the confession of the appellant and by the testimony of other witnesses.

Dr. Morgan Callaway, Jr., was a resident of the City of Austin. He was a professor of English in the University of Texas. Appellant had, in former years, been a student in the University and in after years had had dealings with Dr. Callaway. Upon the request of the appellant, Dr. Callaway went to the Driskill Hotel in Austin, where they met a man whom the appellant introduced as Wisdom. A note payable to George T. Vickers for $1,250.00, dated July 1, 1921, signed by Henry Dannelly, was exhibited to Dr. Callaway. This note was introduced in evidence, and, according to its purport, was secured by a vendor's lien upon Lot 6, Block 1 of R. B. Parks' Subdivision of Block 1405 of the City of Dallas, purported to have been transferred by George T. Vickers to S. T. Tubbs and by him trans-.

ferred to C. E. Wisdom. This note and the release described in the indictment were delivered to Dr. Callaway in consideration for which he gave a check for $1,080.00, payable to S. T. Tubbs. This check and the proceeds thereof were collected and used by the appellant, and the purported note for $1,250.00 was forged by him.

The validity of the indictment is attacked upon the ground that in charging the intent with which the forgery was committed, it failed to use the language contained in the statute. The general statute denouncing forgery contains these words:

"He is guilty of forgery who, without lawful authority, and with intent to injure or defraud, shall make a false instrument in writing, purporting to be the act of another, in such manner that the false instrument so made would (if the same were true) have created, increased, diminished, discharged or defeated any pecuniary obligation, or would have transferred, or in any manner have affected any property whatever." (Art. 979, P. C., 1925.)

Uniformly, the courts have held that when charging the intent in ordinary forgery, it is unnecessary to go further than to use the language of the general statute which we have quoted, namely, "with intent to injure or defraud." See Art. 454, Vernon's Texas Crim. Stat., Vol. 2; Johnson v. State, 35 Texas Crim. Rep., 271.

Article 947, P. C., (New 1006) upon which the present prosecution is founded, was enacted in 1876. It has special reference to forgery of land titles and declares guilty of forgery, every person who falsely makes, alters, forges or counterfeits, or causes or procures such to be done "with the intent to make money or other valuable thing thereby, or with intent to set up a claim or title, or aid or assist anyone else in setting up a claim or title, to lands or any interest in lands, or to prosecute or defend a suit, or aid or assist anyone else in prosecuting or defending a suit with respect to lands, or to cast a cloud upon the title, *or in any way injure,* obtain the advantage of, or prejudice the rights or interest of, the true owners of lands, *or with any fraudulent intent whatever,* shall be deemed guilty of forgery."

It is the contention of the appellant that the indictment is invalid in that it fails to set forth by way of averment the specific intent with which the false instrument was made. From the indictment in question, we take the following quotation:

" * * * then and there, without lawful authority and with intent to injure and defraud, wilfully and fraudulently, did

make and forge a false instrument in writing, purporting to be the act of another, which false and forged instrument did then and there relate to and affect an interest in land in the said State of Texas, and was then and there so falsely made by the said E. A. Decherd in such manner that if the same were true and genuine it would have affected and transferred the title to certain land in the said State of Texas, and which said false instrument purports to be a Release of Vendor's Lien from S. T. Tubbs to Morgan Callaway, Jr., and is of the following tenor, etc."

It is to be noted that the pleader, in charging the intent, has used general terms which are in substance those used in the statute, which says: "or in any way injure or with any fraudulent intent whatever." We note that in Willson's Texas Criminal Forms (Form 43), page 221, the form of indictment under this statute is the same as that used in the present instance, and reference made to numerous cases. Among them is Ham v. State, 4 Texas Crim. App., 645, in which the indictment in the particular in question was like that in the instant case. See also Francis v. State, 7 Texas Crim. App., 501; Johnson v. State, 9 Texas Crim. App., 249. The opinion in Ham v. State, supra, was rendered in the year 1878, since which time there have been several revisions of the statute without change in the article now under consideration in the particular mentioned. Under these conditions the presumption of legislative sanction of the judicial interpretation prevails. See Lewis v. State, 58 Texas Crim. Rep., 351, and precedents there cited. Moreover, it is to be noted that in the chapter enacted at the same time as Article 947 old (1006 new) is found Article 951 old (1010 new), in which it is said:

" * * * and it shall only be necessary in an indictment under this chapter to state with reasonable certainty the act constituting the offense, and charge, in connection therewith, in general terms, the intention to defraud, without naming the person or persons it was intended to defraud."

It is conceded by the appellant that this court, in several cases of comparatively recent date, has upheld an indictment couched in the same terms as those criticized in the present instance. See Thompson v. State, 69 Texas Crim. Rep., 31; Weber v. State, 78 Texas Crim. Rep., 268; Roberts v. State, 85 Texas Crim. Rep., 196. In these cases the attack upon the indictment was not in the express terms of that in the present instance.

Appellant cites numerous precedents supporting the general proposition that words of the statute descriptive of the act con-

demned and proof of which is essential may not be omitted but must be set up by avertment. We are of the opinion that for the reasons hereinabove stated, the indictment in the present case should be upheld; and we are also of the opinion that the precedents upholding it are not at variance with the general principles upon which appellant relies touching the sufficiency of the indictment; that in stating the intent in the indictment, under the statute in question, the averment is sufficient which charges that the act was without lawful authority and with the intent to defraud. This view finds support in the language of the statute wherein it is said: "or in any way injure, obtain the advantage of, or prejudice the rights or interest of, the true owners of the land, or with any fraudulent intent whatever," and in Article 951 (new 1010), which is quoted above.

In the release introduced in evidence, the $1,250.00 note is described as *"payzable" to George T. Vickers,* whereas, in the indictment it is spelled "payable." The objection to the release upon the ground of variance was overruled, and we think correctly so. The alleged variance was immaterial. Illustrations will be found in numerous cases cited by Mr. Branch in his Ann. Texas P. C., Sec. 490. Among them are the following: Eight was spelled "eiget"; drink was spelled "dring"; appropriate was spelled "appropiate"; twenty was spelled "tenty"; carnally was spelled "canally"; street was spelled "stree"; money was spelled "monet." These illustrations may be extended. See also Stuart v. State, 57 Texas Crim. Rep., 592, wherein "strick" was used for strike; Albertson v. State, 84 Texas Crim. Rep., 574, wherein become in the instrument introduced was spelled "becoke"; Gill v. State, 84 Texas Crim. Rep., 531, wherein the word corporeal was spelled "carporcal" in the indictment; Garza v. State, 87 Texas Crim. Rep., 537, wherein the word pistol was spelled "pistle" in the complaint and information; Coffey v. State, 82 Texas Crim. Rep., 57, wherein February was spelled "Reburary." It is only a material variance that is available. Underhill's Crim. Ev., 3rd Ed., Sec. 627.

The receipt of the note for $1,250.00, described in the release, was opposed upon the ground that it offended against the rule excluding extraneous crimes. The evidence shows that the note and release were delivered at the same time to Dr. Callaway; that upon the receipt of same Dr. Callaway paid $1,080.00; that the note was in fact forged by the appellant. The transactions are deemed so interrelated as not to be within the inhibition against the receipt of evidence of collateral offenses.

The fact that Dr. Callaway paid to the appellant $1,080.00 at the time of the delivery of the forged release and the forged note was, we think, properly received in evidence, as was also the letter which the appellant had written to Dr. Callaway in which he admitted that he had appropriated the check for $1,080.00 to his own use and not to the payment of the note. These matters bore upon the issue of intent of the appellant. Upon the same principle, the note for $1,250.00 which was executed by Henry Dannelly and wife to George T. Vickers, which was shown to have been the genuine note and lien upon the property described in the release, which note was never owned by either the appellant or Tubbs, we think was also properly received upon the issue of intent.   Hennessy v. State, 23 Texas Crim. App., 340; Rose's Notes on Texas Rep., Vol. 5, page 615.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We quoted in our former opinion a part of Art. 1010 P. C., 1925, which lays down a legislative measure of what is necessary in an indictment for any offense set out in Chapter 2, Title 14, of said Penal Code. Under same two essential elements are specified for such indictments, viz: a reasonably certain description of the act constituting the offense, and also in connection therewith an allegation in general terms of an intent to defraud.   While Art. 1006 of said P. C. names many specific acts, the doing of which constitute forgery, and names several specific intents, concluding with the general expression "or with any fraudulent intent whatever," we do not think the enumerations in said article contravene or affect the broad direction of Art. 1010 as to indictments, which is above referred to.   We are still of opinion that the indictment in this case is sufficient without further allegation as to the intent of the accused.

Appellant urges that the case of Ham v. State, 4 Texas Crim. App., 645, cited in our opinion as upholding a similar indictment to the one herein, was not for any of the offenses set out in Art. 1006, supra, but for a violation of the law of uttering forged instruments, which is Art. 1008 of said 1925 P. C.   While this is true, an inspection of Art. 1008 discloses the fact that after enumerating the acts of uttering or passing forged instruments therein forbidden, it says, "With the intent mentioned in Art. 1006 of this chapter, or with any other fraudulent intent whatsoever," thus making it plain that the law regarding the allega-

tion of intent under the article whose violation was charged in the Ham case, supra, is the same as that of Art. 1006 in so far as the question of intent is concerned. If there was no need for an allegation of particular intent in the Ham case under Art. 1008, there is no need for an allegation of particular intent in the instant case under Art. 1006.

We have examined the additional authorities cited by appellant but none of them seem to be in point.

We do not think we can add to what was said in regard to appellant's objection to the admission of the alleged forged release in evidence. The original instrument is sent up with the record and to us seems clearly to evidence a case of misspelling. Same shows plainly that the maker thereof intended to write the word "payable," but struck the letter "z" instead of the second "a," and also that he first put another "a" after the letter "b" and then wrote the letter "l" upon and over said last named "a." It is also perfectly evident that the pleader wrote the date 1922 and then erased or partially erased the last figure "2" and wrote the figure "1" above it.

We think the introduction of the genuine vendor's lien note for $1,250.00, the release of which formed the subject of the forgery in the instant case, was warranted as part of the State's case in showing that the genuine note had not been paid and that no genuine release of same had been executed.

There are a number of other questions which are raised, all of which were considered on original presentation, but not deemed of sufficient materiality to call for discussion. We have found no reason to change our conclusion as reached on the original hearing, and the motion for rehearing will be overruled.

*Overruled.*